J-A18038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.S., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| M.I.S. AND T.W., | : | |
| | : | |
| Appellees | : | No. 47 MDA 2015 |

Appeal from the Order entered on December 9, 2014
in the Court of Common Pleas of Columbia County,
Civil Division, No. 2006-CV-0001648-DU

BEFORE:  FORD ELLIOTT, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JULY 29, 2015**

M.S. ("Paternal Grandmother") appeals from two Orders, concerning custody of her minor grandchildren, C.S. and F.S. ("the Children"), ruling that (1) the mother of the Children, M.I.S. ("Mother"), is not an "incapacitated" parent under 23 Pa.C.S.A. § 5324(3)(iii)(B),[1] and Paternal Grandmother therefore lacks standing to seek legal and physical custody of the Children; and (2) Mother's sister, T.W. ("Maternal Aunt"), shall have primary physical custody and full legal custody.  We affirm.

The trial court set forth the relevant factual and procedural history underlying this appeal as follows:

---

[1] Section 5324, governing standing for any form of legal or physical custody, provides, in relevant part, that "[a] grandparent of the child who is not *in loco parentis* to the child" has standing when "the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or **incapacity**[.]" 23 Pa.C.S.A. § 5324(3)(iii)(B) (emphasis added).

The subjects of this matter are the [C]hildren of [Mother] and [F.T.S. ("Father")]. … [Mother] and [Father] were divorced on June 8, 2012, after long and contentious litigation. On July 1, 2012, [Father] was murdered in his home located in Columbia County. Subsequently, a state-wide investigating grand jury issued a presentment charging [Mother] and her father, [A.R.F.], also known as [A.R.S.,[FN 1]] with the crime. [Mother] and [A.R.F.] are also charged in the same criminal information with the crime of arson, involving a fire at the home of [Paternal Grandmother]. [Mother] was arrested on July 28, 2014, and is currently incarcerated in the Columbia County Correctional Facility without bail and awaiting trial.

> [FN 1] [A.R.F.] is presently in custody in Buenos Aires, Argentina, awaiting extradition proceedings to the United States.

Prior to her arrest, [Mother] executed a document which purports to appoint [Maternal Aunt] as guardian of[] [the C]hildren.

[Paternal Grandmother] then filed a [C]omplaint seeking legal and physical custody of the [C]hildren. Following the procedures adopted in the 26th Judicial District, the matter was referred to that court's standing custody Master for [an] expedited hearing. The Master concluded that the best interests of the [C]hildren mandated that they temporarily live with [Maternal Aunt] in the Philadelphia area[,] pending resolution of the criminal charges against [M]other. [Paternal Grandmother] filed exceptions to the Master's recommendation[,] and … a preliminary conference was scheduled before [the trial court]. Given the unusual facts of this matter, th[e trial] court immediately appointed a guardian *ad litem* for the [C]hildren, and [a] further conference was scheduled to permit the guardian *ad litem* to meet with the [C]hildren and determine their wishes. In addition, counsel for [Mother] objected to [Paternal Grandmother's] standing to seek legal and physical custody of the [C]hildren. All counsel agreed that there were no issues of fact, and the [trial] court then issued a briefing schedule to resolve the issue of "standing."

The issue before the court was the meaning of the word "incapacitated" in 23 Pa.C.S.A. [§] 5324(3)[(iii)(B)].[FN 2] [Paternal Grandmother] assert[ed] that [Mother's] indefinite incarceration prevents her [from] exercising essential parental duties. [M]other … remind[ed the trial court] of her presumption of innocence. In addition, [Mother argued] that although her incarceration hampers her ability to be a parent, it does not prevent her from being able to make parental decisions for [the C]hildren, or from having regular, albeit re[s]trained, contact with them.

> [FN 2] The legislature did not see fit to define this word in the context of grandparental custody litigation. [*See* 23 Pa.C.S.A. § 5322 (definitions section).]

Trial Court Opinion, 1/23/15, at 1-3 (footnotes in original, some footnotes omitted).

By an Order entered on December 9, 2014 (hereinafter "the Standing Order"), the trial court ruled that Mother is not "incapacitated" under 23 Pa.C.S.A. § 5324(3)(iii)(B), and thus, Paternal Grandmother lacked standing to bring this custody action. The trial court later entered an Order on December 18, 2014 (hereinafter "the Custody Order"), granting full legal custody and primary physical custody of the Children to Maternal Aunt. Paternal Grandmother filed a timely Notice of Appeal from these two Orders, along with a Concise Statement of Errors Complained of on Appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Paternal Grandmother presents the following issues for our review:

I. Whether the [trial] court committed an abuse of discretion and/or an error of law in concluding that [] Mother is not an incapacitated person[,] as contemplated by 23 Pa.C.S.A.

§ 5324(3), thereby precluding Paternal Grandmother[']s action for sole legal and sole physical custody due to lack of standing pursuant to 23 Pa.C.S.A. § 5324(3)?

II. Whether the [trial] court committed an abuse of discretion and/or an error [of] law in awarding sole legal and primary physical custody to [] Maternal Aunt?

III. Whether the [trial] court committed an abuse of discretion and/or an error [of] law by failing to hold any hearings (fact[-]finding or otherwise)[,] including an expedited hearing pursuant to 23 Pa.C.S.A. § 5330(A)[,] to assess whether [Mother] poses a risk of physical, emotional or psychological harm to the Children[,] or to take any evidence in this matter?

IV. Whether the [trial] court committed an abuse of discretion and/or an error [of] law by failing to follow the procedures set forth at 23 Pa.C.S.A. § 5337 regarding the relocation of the [] Children?

V. Whether the [trial] court[,] by it[]s specially[-]appointed [M]aster[,] committed an abuse of discretion and/or an error [of] law by failing to include counsel in his interview with the Children?

Brief for Appellant at 4 (capitalization omitted, issues numbered).

The scope of review of an appellate court reviewing a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

***D.G. v. D.B.***, 91 A.3d 706, 707-08 (Pa. Super. 2014) (citation and brackets omitted).

In Paternal Grandmother's first issue, she argues that "[w]hen [M]other became incapacitated by her current state of incarceration, that incapacity gave rise to [Paternal Grandmother's] standing to file an action[.]" Brief for Appellant at 20; ***see also*** 23 Pa.C.S.A. § 5324(3)(iii)(B) (granting standing to a grandparent of a child where "the child is substantially at risk due to parental … incapacity").

This Court has explained that

> [t]he concept of standing, an element of justiciability, is a fundamental one in our jurisprudence: no matter will be adjudicated by our courts unless it is brought by a party aggrieved in that his or her rights have been invaded or infringed by the matter complained of. … Moreover[, i]n the area of child custody, principles of standing have been applied with particular scrupulousness because they serve a dual purpose: not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning.

***D.G.***, 91 A.3d at 708 (citations, quotation marks and paragraph breaks omitted). A trial court's determination regarding standing may not be disturbed absent an abuse of discretion or an error of law. ***Butler v. Illes***, 747 A.2d 943, 944 (Pa. Super. 2000).

Here, observing that the Legislature did not define the term "incapacity" in connection with section 5324(3)(iii)(B),[2] Paternal Grandmother asserts that "Pennsylvania jurisprudence struggles with the term incapacity as it relates to an incarcerated parent in [a] child custody case." Brief for Appellant at 11. However, Paternal Grandmother contends that cases involving termination of parental rights, based upon incapacity due to incarceration, provide guidance.

Paternal Grandmother concedes that our Supreme Court, in a plurality decision in **In re R.I.S.**, 36 A.3d 567 (Pa. 2011), held that "this Court has never adopted or countenanced a view that incarceration alone is *per se* evidence of parental incapacity …." **Id.** at 574; **see also** Brief for Appellant at 17. However, Paternal Grandmother points out that the Supreme Court subsequently re-visited its decision in **In re R.I.S.**, and concluded, in **In re Adoption of S.P.**, 47 A.3d 817, 828 (Pa. 2012), as follows:

> [W]e now definitively hold that incarceration, while not a litmus test for termination [of parental rights], can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence[,]" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent[.]"

---

[2] Paternal Grandmother points out that the Pennsylvania Rules of Civil Procedure define the term "incapacitated person" as follows: "[A]n adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that the person is partially or totally unable to manage financial resources or to meet the essential requirements for physical health and safety[.]" Pa.R.C.P. 2051; **see also** Brief for Appellant at 15.

*Id.* at 830 (quoting 23 Pa.C.S.A. § 2511(a)(2)); *see also* Brief for Appellant at 16-17.

After review, we are unpersuaded by Paternal Grandmother's claim that "the Pennsylvania Supreme Court holds the position that incarceration is determinative on the issue of incapacity." Brief for Appellant at 18. Indeed, the Court in *R.I.S.* "emphatically" held that incarceration alone is **not** *per se* evidence of parental incapacity. *R.I.S.*, 36 A.3d at 574. Moreover, contrary to Paternal Grandmother's claim, we conclude that the Supreme Court's decision in *S.P., supra*, does not undermine the holding in *R.I.S.*,[3] which remains good law. If incarceration alone is not determinative on the issue of parental incapacity in the context of termination of parental rights, we see no reason to rule to the contrary in the context of grandparental standing under section 5324(3)(iii)(B), and conclude that the trial court correctly

---

[3] Indeed, the *S.P.* Court stated that its holding, *i.e.*, that "that incarceration, while not a litmus test for termination, *can* be determinative … to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2)[,]" was "[i]n line with the expressed opinion of a majority of justices in *R.I.S.*" *S.P.*, 47 A.3d at 828 (emphasis added). Moreover, the decisions in *R.I.S.* and *S.P.* apply only to cases concerning the termination of parental rights. However, since our research discloses no appellate decisions interpreting the term "incapacity" under 23 Pa.C.S.A. § 5324(3)(iii)(B), we are guided by *R.I.S.* and *S.P.*

ruled that Mother is not "incapacitated" under that section.[4]  Additionally, it is undisputed that, here, Mother maintains contact and communication with the Children, albeit to a limited extent due to her incarceration.

Accordingly, we conclude that (1) the trial court correctly ruled in the Standing Order that Paternal Grandmother lacks standing under 23 Pa.C.S.A. § 5324(3)(iii)(B) at this time; and (2) she is therefore precluded from challenging the Custody Order. Moreover, we need not address Paternal Grandmother's remaining issues on appeal, since her lack of standing precludes her from challenging these matters.

Orders affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/29/2015

---

[4] Though section 5324 does not define the term incapacity, we conclude that incarceration of a parent alone does not meet the definition of incapacity under any of the statutory or rule-based definitions of this term cited by Paternal Grandmother. *See* Pa.R.C.P. 2051, *supra*; 23 Pa.C.S.A. § 5602 (section of the Pennsylvania Standby Guardianship Act defining incapacity as "[a] chronic and substantial inability, *resulting from a mental or organic impairment*, to understand the nature and consequences of decisions concerning the care of the designator's dependent minor and a consequent inability to care for the minor.") (emphasis added).